John Studstill Jr
192 Brentwood Street
Inkster MI  48141

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **John  Studstill Jr**<br><br>Plaintiff,<br><br>vs.<br><br>BAC Home Loans Servicing , LP<br><br>Defendant | Case #  **10-13975**<br><br>**RESPONSE TO DEFENDANTS<br>MOTION TO DISMISS** |

Date: November 15, 2010

(1) The Plaintiff, in his Original Petition, plead that Defendant charged false fees as stipulated to Plaintiff as listed on the HUD 1 Settlement Statement, included as Exhibit 1. Plaintiff specifically plead that Defendant, at the time of settlement of the contract, Defendant failed to provide documentation to establish that said fees were not included in those fees expressly addressed by the Real Estate Settlement Procedures Act as forbidden to be charged to Plaintiff at settlement.

(2) Plaintiff stipulated each fee charged with particularity.  Plaintiff calculated the precise amount that Plaintiff would have overpaid the note had Plaintiff paid off the note as stipulated by the Truth In Lending Statement provided by Defendant (see Exhibit 2). Plaintiff specifically alleged that said fees were fraudulent.  Plaintiff alleged that Defendant failed to provide full disclosure by failing to provide documentation to prove that the above fees were authorized by law, that the services alleged provided were necessary, that the amount charged for each service was necessary, and that Defendant did not take an undisclosed markup on said fees.

(3) Plaintiff further alleged that Defendant, acting in concert and collusion with the loan broker, toward the perpetration of a carefully contrived connivance, provided the amounts listed in the HUD 1 Settlement Statement, to the loan broker as an undisclosed yield spread premium. Said undisclosed yield spread premium is alleged to be in addition to the one percent loan origination fee, charged to Plaintiff, as allowed by law. Plaintiff alleged that said payment to the broker of undisclosed yield spread premium was a predicate act intended to improperly influence loan broker to misrepresent facts to Plaintiff, to give partial disclosure of those facts which would appear favorable to the intent of the loan broker, while failing to give full disclosure of other facts that would not seem favorable to the contract.

(4) By the above, Plaintiff stated a claim for which recovery could be had, and therefore, Defendant's motion to dismiss is frivolous. Plaintiff moves the court to deny Defendant's pleading, or, in the alternative, treat Defendant's pleading as a request for more definite statement, in which case, Plaintiff will provide a more definite statement as requested.

(5) Further, Plaintiff moves the court to order sanctions against Defendant for filing a frivolous pleading and for failing to speak with candor to the court as Defendant is totally inept or acted with deliberate intent to improperly influence the court with false pleadings.

## STATUTE OF LIMITATIONS/ EQUITABLE TOLLING

(6) Plaintiff acted with due diligence by dealing only with licensed professionals. Plaintiff, by so doing had cause to trust in the proactive statements of Defendants concerning the true value of the property, the condition of the real estate market, and the propriety of the fees charged to Plaintiff at closing. Defendants acted with deliberate malice toward Plaintiff in that Defendants by making proactive statements to Plaintiff that revealed certain facts which would give a reasonable person of ordinary prudence cause to believe the current loan was properly priced and that said loan was the only loan Plaintiff qualified for while withholding facts which would have given Plaintiff full disclosure. Defendants actively concealed the complete truth from Plaintiff with the intent of defrauding Plaintiff.

    a. The Eleventh Circuit stated that "in deciding whether the statute should be tolled, it must be determined whether a 'reasonably diligent plaintiff' would have discovered the fraud." Id. ( *Sterlin v. Biomune Systems, 154 F.3d 1191, 1201 (10th Cir. 1998))*.

(7) Plaintiff, once put on notice of the pervasive fraud affecting the real estate industry, acted immediately with due diligence and engaged professionals to examine into the propriety of the practices engaged in by Defendants.

    *a.* The First Circuit, based on the same rationale as the Seventh Circuit, has stated that while "'storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner, . . . his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud." *Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 128 (1st Cir. 1987)*.

(8) Defendants acted in concert an collusion, one with the other, in an organized scheme wherein, from the beginning, one predicate act after another was committed against Plaintiff in order to establish trust, then use that trust to perpetrate fraud against Plaintiff by systematically making false claims to Plaintiff in order to induce Plaintiff into entering into an express contract that was based on fraud. Plaintiff acted in good faith in all things and with due diligence by only dealing with licensed professionals. In as much as all actors were professionals, duly licensed by the state and federal governments and all governed by the relevant consumer protection laws, Plaintiff had cause to expect good faith and fair dealings from said licensed professionals.

    a. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989); [*15] Rest.2d Contracts § 205. A mortgage broker has fiduciary duties. *Wyatt v. Union Mortgage Co.*, (1979) 24 Cal. 3d. 773. Further, In *Jonathan Neil & Associates, Inc. v Jones*, (2004) 33 Cal. 4th 917.

    b. "A person who provides brokerage services to a borrower in a covered loan transaction by soliciting lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this fiduciary duty [is owed] to the consumer regardless of whom else the broker may be acting as an agent for . . . The fiduciary duty of the broker is to deal with the consumer in good faith. If the broker knew or should have known that the Borrower will or has a likelihood of defaulting ... they have a fiduciary duty to the borrower not to place them in that loan." *(California Department of Real Estate, Section 8: Fiduciary Responsibility, www.dre.ca.gov)*.

(9) Plaintiff had no notice of wrong doing until the improprieties of the real estate market were finally made public in the popular media.

    **a.** Other courts have indicated the one-year limitations period commences when the plaintiff is placed on inquiry notice, unless the plaintiff can show the actual exercise of reasonable diligence to discover the fraud. If the plaintiff can show the exercise of such diligence, the limitations period begins to run when the plaintiff actually discovers the facts underlying the alleged fraud. If, however, the plaintiff cannot show such actual diligence, constructive knowledge of the fraud is imputed to the plaintiff as of the date of inquiry notice. For example, in <u>Dodds v. Cigna Securities, Inc., 12 F.3d 346 (2d Cir. 1993)</u>, the Second Circuit stated that "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry." <u>Id. at 350</u>. The Dodds court further stated that the doctrine of "equitable tolling will stay the running of the statute of limitations only so long as the plaintiff has exercised reasonable care and diligence in seeking to learn the facts which would disclose [**35] fraud." Id. (internal quotations omitted). Sterlin v. Biomune Sys., 154 F.3d 1191, 1201.

(10) When Plaintiff became aware of potential fraud by the licensed professionals Plaintiff had been induced to trust, Plaintiff made due diligent inquiry and discovered the fraud complained of herein.

    *a.* Plaintiff exercised due diligence and the time limitations in the Truth in Lending Act should be tolled so that the intent of the Legislature may be realized. The Seventh Circuit, essentially merging the inquiry notice and reasonable diligence standards into one governing standard, has indicated that a plaintiff is not put on inquiry notice until the plaintiff reasonably should have discovered the fraud. See <u>Marks v. CDW Computer Ctrs., Inc., 122 F.3d 363, 368 (7th Cir. 1997)</u> ("Inquiry notice does not begin to run unless and until the investor is able, with the exercise of reasonable diligence (whether or not actually exercised), to ascertain the information needed to file suit."); see also <u>Law v. Medco Research, Inc., 113 F.3d 781, 785 (7th Cir. 1997)</u> ("The plaintiff gets a year after he learned or should have learned the facts that he must know to know that he has a claim."). An earlier Seventh Circuit case, however, rejected the plaintiff's argument that "in spite of reasonable diligence, it could not discover the facts underlying the defendants' fraud" and held that the one-year limitations period began to run once the plaintiff was placed on inquiry notice of the possibility of fraud. <u>Whirlpool Fin. Corp. v. GN Holdings, Inc., 67 F.3d 605, 610 & n.3 (7th Cir. 1995)</u>. Sterlin v. Biomune Sys., 154 F.3d 1191, 1201.

(11) In the alternative, the acts as alleged against Defendants amount to criminal fraud in that, in a scheme to deceive and mislead Plaintiff, Defendants, by sham and trickery, induced Plaintiff into entering into a predatory loan contract wherein Plaintiff was charged amounts not allowed by law. Defendants, in perpetrating the above referenced predicate acts toward their carefully crafted criminal conspiracy, relied on the trust engendered by the laws intended to protect Plaintiff and others similarly situated from just the sort of abuse visited on Plaintiff. Plaintiff alleges a scheme of fraud and,

therefore, upon proof at trial, Plaintiff has a right to seek common law equitable recoupment.

### A. TENDER BY SETOFF

(12)    Plaintiff has alleged a conspiracy on the part of all defendants which gives Plaintiff a claim against all defendants equally as coconspirators, Plaintiff has an equitable right to claim tender by setoff against the claims herein made against defendants.

### PLAINTIFF MADE CLAIMS WITH SPECIFICITY AND PARTICULARITY

(13) Plaintiffs alleged that the original lender overpaid the loan originator, with fees improperly charged to Plaintiff at closing in order to induce the originator of the loan to breach his fiduciary duty to Plaintiff. By doing this, they committed common law fraud by making false statements to Plaintiff in order to convince Plaintiff that Plaintiff only qualified for a more expensive loan product than Plaintiff actually qualified for. Plaintiff is prepared to prove up said claims after discovery, at a trial on the merits.

(14) Plaintiff alleged that Defendant(s) made partial disclosure of alleged facts concerning the conditions of the loan which is the basis for the issuance of the security instrument and lien document at issue. Plaintiff is prepared to prove at trial, after complete discovery that Defendant(s) failed to give full disclosure of facts that, if disclosed would have caused Plaintiff to make a different decision than the one made.

(15) Plaintiff alleged that the trustee, at closing, executed a carefully contrived connivance intended to apply undue pressure on Plaintiff in an effort to effect lack of full disclosure to Plaintiff and induce Plaintiff to enter into a contract without said full disclosure. Plaintiff is prepared to provide proof, at trial, sufficient to convince a jury.

(16) Plaintiff alleges that, at closing, false fees were charged to Plaintiff by lender. Said allegations are reiterated below with specificity. Plaintiff alleged that the original lender sold the security instrument immediately after closing, but failed to transfer the lien document to the purchaser of said security instrument. Plaintiff is prepared to prove, subsequent to discovery, that the lender, while still holding the security instrument,

received consideration and, therefore, could not be harmed rendering the lien unenforceable.

(17) Plaintiff alleged, and is prepared to prove at trial, that the lender maintained possession of the lien document in order to be able to file an IRS Form 1099a and write the entire amount of the original note off lender's capital gains tax and, thereby, receive consideration a second time.

(18) Plaintiff alleged, and is prepared to prove at trial that, the original security instrument, if said instrument still exists, may give the holder a claim against the signator, but have no claim against the property.

(19) Plaintiff alleged, and is prepared to prove at trial that, BAC Home Loans servicing, LP, and the attorneys claiming to represent same, have committed fraud by representing to the court that BAC Home Loans servicing, LP is as real party in interest in the contract of sale and has standing to take said property from defendant when no such claim exists.

(20) Plaintiff has alleged, and is prepared to prove at trial, that the defendant(s), by claiming standing to express the provisions of the contract of sale and lien, claim to be real parties in interest and, therefore, under the Federal Trade Commission Holder Rule 16 CFR 433, are subject to any claim Plaintiff may have against the original lender.

### B. LENDER CHARGED FALSE FEES

(21) Lender charged fees to Plaintiff that were in violation of the limitations imposed by the Real Estate Settlement Procedures Act as said fees were simply contrived and not paid to a third party vendor.

(22) Lender charged other fees that were a normal part of doing business and should have been included in the finance charge.

(23) Below is a listing of the fees charged at settlement. Neither at settlement, nor at any other time did Lender or Trustee provide documentation to show that the fees herein listed were valid, necessary, reasonable, and proper to charge Petitioner.

| | | |
|---|---|---|
| 801 | Loan Origination Fee | $1,700.00 |
| 803 | Appraisal Fee | $375.00 |

| | | |
|---|---|---:|
| 804  | Credit Report Fee | $20.00 |
| 805  | Inspection Fee | $10.00 |
| 808  | Tax Service Fee | $58.00 |
| 809  | Processing Fee | $287.00 |
| 810  | Underwriting Fee | $350.00 |
| 811  | Wire Fee | $51.00 |
| 812  | Flood Letter Fee | $10.00 |
| 901  | Interest from to @ /day ( days) | $228.41 |
| 1001 | Hazard Insurance | $607.50 |
| 1003 | City Property Taxes | $2,566.48 |
| 1004 | County Property Taxes | $392.77 |
| 1101 | Settlement fee | $300.00 |
| 1108 | Title Insurance | $349.20 |
| 1111 | Courier Fee | $31.00 |
| 1201 | Recording Fee | $42.00 |

(24) Debtor is unable to determine whether or not the above fees are valid in accordance with the restrictions provided by the various consumer protection laws. Therefore it was demanded to please provide;

    a. a complete billing from each vendor who provided the above listed services;

    b. the complete contact information for each vendor who provided a billed service;

    c. clearly stipulate as to the specific service performed;

    d. a showing that said service was necessary;

    e. a showing that the cost of said service is reasonable;

    f. a showing of why said service is not a regular cost of doing business that should rightly be included in the finance charge.

(25) The above charges have been disputed and deemed unreasonable until such time as said charges have been demonstrated to be reasonable, necessary, and in accordance with the limitations and restrictions included in any and all laws, rules, and regulations intended to protect the consumer.

(26) In the event lender fails to properly document the above charges, borrower will consider same as false charges. The effect of the above amounts that borrower would pay over the life of the note will be an overpayment of $60,034.11. This amount will be reduced by the amount of items above when said items are fully documented.

## C. RESPA PENALTIES

(27) From a cursory examination of the records, with the few available, the apparent RESPA violations are as follows:

a. Good Faith Estimate not within limits

b. No HUD-1 Booklet

c. Truth In Lending Statement not within limits compared to Note

d. Truth in Lending Statement not timely presented

e. HUD-1 not presented at least one day before closing

f. No Holder Rule Notice in Note

g. No 1st Payment Letter

    1. No signed and dated :

    2. Financial Privacy Act Disclosure;

    3. Equal Credit Reporting Act Disclosure;

    4. notice of right to receive appraisal report;

    5. servicing disclosure statement;

    6. borrower's Certification of Authorization;

    7. notice of credit score;

    8. RESPA servicing disclosure letter;

    9. loan discount fee disclosure;

    10. business insurance company arrangement disclosure;

    11. notice of right to rescind.

(28) The courts have held that the borrower does not have to show harm to claim a violation of the Real Estate Settlement Procedures Act, as the Act was intended to insure strict compliance. And, in as much as the courts are directed to assess a penalty of no less than two hundred

dollars and no more than two thousand, considering the large number enumerated here, it is reasonable to consider that the court will assess the maximum amount for each violation.

(29) Since the courts have held that the penalty for a violation of RESPA accrues at consummation of the note, borrower has calculated that, the number of violations found in a cursory examination of the note, if deducted from the principal, would result in an overpayment on the part of the borrower, over the life of the note, of $140,842.42.

(30) If the violation penalty amounts for each of the unsupported fees listed above are included, the amount by which the borrower would be defrauded is $145,048.32

(31) Adding in RESPA penalties for all the unsupported settlement fees along with the TILA/Note variance, it appears that lender intended to defraud borrower in the amount of $345,924.85

## MORE DEFINITE STATEMENT

(32) Plaintiff is willing to prepare a more definite statement for the court. Subsequent to the filing of the original complaint, Plaintiff has made inquiry and found evidence of knowing and deliberate criminal acts by lenders intended to defraud Plaintiff of Plaintiff's property and is prepared to file a more definite statement with the court.

## ONGOING CRIMINAL CONSPIRACY

(33) Defendant complains that the document is similar to other documents alleging wrongdoing by banks and lending institutions. This begs a question, does the wrongdoing of Defendant(s) become somehow less wrong simply because they do it to everyone? Simply because the lenders are accused by numerous plaintiffs of acting in concert and collusion, one with the other, of the perpetration of predicate acts toward the furtherance of an ongoing criminal enterprise intended to strip the people of this country of the equity in their property, and thereby, deprive them of their homes, is hardly a valid objection. It seems Defendant(s), by complaining that others have accused them of the same sorts of fraud should somehow render the claims made here less valid. This also simply demonstrates the extent of their acts of theft and fraud. Plaintiff suggests, instead of attacking the messenger, the court may consider convening a court of inquiry to

examine into the fraudulent practices of the Defendant(s) and encourage the federal government to pick up the mantel and prosecute the criminal wrongdoing of the banks and lending institutions.

## CONCLUSION

(34) Plaintiff maintains that Defendant(s) motion of dismissal is without merit, and that counsel, in making said claim, has failed to speak with candor with the court.

Respectfully Submitted,

John Studstill Jr

## **VERIFICATION**

I, John H. Studstill Jr, do swear and affirm that all statements made herein are true and accurate, in all respects, to the best of my knowledge.

John Studstill Jr
192 Brentwood Street
Inkster, MI 48141

_____
John Studstill Jr

The Person above, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this document and acknowledged to me that he/she executed the same in his authorized capacity and that by his signature on this instrument who is the person who executed this instrument.

I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____        11-15-2010

**NOTARY PUBLIC IN AND FOR**          Notary Seal
**THE STATE OF MICHIGAN**

BERNESTINE BLUNT
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Sep 4, 2013
ACTING IN COUNTY OF Wayne

# Exhibit 1

# Settlement Statement
## Optional Form for Transactions without Sellers

U.S. Department of Housing and Urban Development

OMB Approval No: 2502 0491

**Name & Address of Borrower:**
JOHN H. STUDSTILL, JR.

192 BRENTWOOD ST
INKSTER, MI 48141

**Name & Address of Lender:**
American Equity Mortgage, Inc.
11933 Westline Industrial Dr
St. Louis, MO 63146

**Property Location:** (if different from above)
192 BRENTWOOD ST
INKSTER, MI 48141

**Settlement Agent:**
Professional Escrow Serv-DET

**Place of Settlement:**
26300 Telegraph Rd, Suite 100, Southfield, MI 48034

**Loan Number:** 2003-06-09302

**Settlement Date:** 05/13/2003

### L. Settlement Charges

| | | |
|---|---|---|
| **800.** | **Items Payable in Connection with Loan** | |
| 801. | Loan origination fee 1.848 % to American Equity Mortgage, Inc. | 1,700.00 |
| 802. | Loan discount 0.000 % to | |
| 803. | Appraisal/Collateral Assessment Fee to Meadowbrook Appraisal Group | 375.00 |
| 804. | Credit report to NCO | 20.00 |
| 805. | Inspection fee to Geotrac | 10.00 |
| 806. | Mortgage insurance application fee to | |
| 807. | Mortgage broker fee to | |
| 808. | Tax Service Fee to American Equity Mortgage, Inc. | 58.00 |
| 809. | Processing Fee to American Equity Mortgage, Inc. | 287.00 |
| 810. | Underwriting Fee to American Equity Mortgage, Inc. | 350.00 |
| 811. | Wire Fee to American Equity Mortgage, Inc. | 51.00 |
| 812. | Flood Letter Fee to Geotrac | 10.00 |
| 813. | | |
| 814. | Misc Fee | |
| 815. | Total from HUD-1A Addendum | |
| **900.** | **Items Required by Lender to be Paid in Advance** | |
| 901. | Interest from 05/19/2003 to 06/01/2003 @ $ 17.57 /day | 228.41 |
| 902. | Mortgage insurance premium for months to | |
| 903. | Hazard insurance premium for year(s) to | |
| 904. | Flood Ins Premium | |
| 905. | Misc Prepaid | |
| **1000.** | **Reserves Deposited with Lender** | |
| 1001. | Hazard insurance 10 months @ $ 60.75 /month | 607.50 |
| 1002. | Mortgage insurance months @ $ /month | |
| 1003. | City property taxes 14 months @ $ 183.32 /month | 2,566.48 |
| 1004. | County property taxes 7 months @ $ 56.11 /month | 392.77 |
| 1005. | Annual assessments 2 months @ $ /month | |
| 1006. | Fld Ins Reserve 2 months @ $ /month | |
| 1007. | Misc Reserve 2 months @ $ /month | |
| 1008. | Aggregate Adj | -1,066.77 |
| **1100.** | **Title Charges** | |
| 1101. | Settlement or closing fee to Professional Escrow Serv.-DET | 300.00 |
| 1102. | Abstract or title search to | |
| 1103. | Title examination to | |
| 1104. | Title insurance binder to | |
| 1105. | Document preparation to | |
| 1106. | Notary preparation to | |
| 1107. | Attorney's fees to (includes above item numbers ) | |
| 1108. | Title insurance to Professional Escrow Serv.-DET (includes above item numbers ) | 349.20 |
| 1109. | Lender's coverage $ | |
| 1110. | Owner's coverage $ | |
| 1111. | Courier Fee to Professional Escrow Serv.-DET | 31.00 |
| 1112. | | |
| 1113. | Gap Work Fee | |
| **1200.** | **Government Recording and Transfer Charges** | |
| 1201. | Recording fees: MTG $0.00 DEED $0.00 REL $0.00 | 42.00 |

### M. Disbursement to Others

| | | |
|---|---|---|
| 1501. | SUNTRUST MORTGAGE/CC | 83,957.57 |
| 1502. | | |
| 1503. | | |
| 1504. | | |
| 1505. | | |
| 1506. | | |
| 1507. | | |
| 1508. | | |
| 1509. | | |
| 1510. | | |
| 1511. | | |
| 1512. | | |
| 1513. | | |
| 1514. | | |
| 1515. | | |
| 1520. | **TOTAL DISBURSED** (enter on line 1603) | 83,957.57 |

### N. NET SETTLEMENT

| | | |
|---|---|---|
| 1600. | Loan Amount | $ 92,000.00 |
| 1601. | Plus Cash/Check from Borrower | $ |
| 1602. | Minus Total Settlement Charges (line 1400) | $ 6,521.59 |
| 1603. | Minus Total Disbursements to Others (line 1520) | $ 83,957.57 |
| 1604. | Equals Disbursements to Borrower (after expiration of any applicable rescission period required by law.) | $ 1,520.84 |

X _John H. Studstill Jr._
JOHN H. STUDSTILL, JR.

# Exhibit 2

☐ INITIAL  ☒ FINAL

# FEDERAL TRUTH-IN-LENDING DISCLOSURE

| Creditor | American Equity Mortgage, Inc.<br>11933 Westline Industrial Dr<br>St. Louis, MO 63146 | Borrower(s) | JOHN H. STUDSTILL, JR.<br>MOJISOLA R. STUDSTILL |
|---|---|---|---|
| Loan No. | 2003-06-09302 | | |
| Processor | | Mailing Address | 192 BRENTWOOD ST,<br>INKSTER, MI 48141 |
| Date of Disclosure | 5/2/2003 | | |
| Est. Settlement Date (Date of Closing) | 5/20/2003 | | |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.180 % | $ 128,585.67 | $ 88,984.59 | $ 217,570.26 |

Your MONTHLY PAYMENT SCHEDULE will be:

| # Payments | $ Payment | Beginning On | * | # Payments | $ Payment | Beginning On | * | # Payments | $ Payment | Beginning On | * |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 359 | $604.38 | 7/01/2003 | | | | | | | | | |
| 1 | $597.84 | 6/01/2033 | | | | | | | | | |

* Private Mortgage Insurance (PMI) premiums, if shown, are included in the amount of the periodic payments.

☐ REQUIRED DEPOSIT: The annual percentage rate does not take into account any required deposit.
☐ DEMAND FEATURE: This obligation has a demand feature.
☐ VARIABLE RATE MORTGAGE: Variable Rate Mortgage Program disclosures have been provided earlier which discuss this and other variable rate features of your loan.

☒ ASSUMPTION: Someone buying your property
  ☐ may, subject to conditions    ☒ cannot    assume the remainder of your loan on the original terms.
PROPERTY INSURANCE: Property insurance is required in this transaction. You may obtain such insurance from anyone that is acceptable to the creditor. If you purchase from the creditor you will pay $0.00    for a   0   month term.
SECURITY: You are giving a security interest in:
  ☐ The goods or property being purchased
  ☒ Real property you own located at   192 BRENTWOOD ST   INKSTER, MI 48141
  ☐ Other Collateral
  Collateral securing other loans with us (or an assignee) may also secure this loan.

FILING FEES AND TAXES: $ 75.00
LATE CHARGE: If a payment is 15 days late, you will be charged 5.000 % of Principal and Interest Payment
PREPAYMENT: If you pay off early, you
  ☐ may    ☒ will not    have to pay a penalty.
  ☐ may    ☒ will not    be entitled to a refund of part of the finance charge.

See your actual contract documents for any additional information about nonpayment, default, or any required repayment in full before the scheduled date as well as prepayment refunds and penalties.

☐ All dates and numerical disclosures, except the late payment disclosure, are ESTIMATES.

Borrower(s) understand that delivery of this disclosure is not a commitment by the creditor to make this loan, and that signing this disclosure does not obligate Borrower(s) to accept the loan.